UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA : 
: Criminal No. 06-102-10(JDB)
:
V. :
:
:
:
WAYNE PIERRE, ET AL :

MOTION IN LIMINE TO PRECLUDE HEARSAY
FROM ALLEGED COCONSPIRATORS

Wayne Pierre, by and through undersigned counsel, hereby respectfully moves the Court for an order precluding admission at trial of any out-of-court statements purportedly made by any alleged indicted or unindicted co-conspirators as their introduction would violate Mr. Pierre's rights under the Confrontation Clause of the United States Constitution. In particular, counsel submits that statements attributed to an alleged and nontestifying coconspirator by a witness testifying should be excluded as unreliable and testimonial hearsay as such statements are obtained by the government through questioning of the witness after arrest and prior to trial for the purpose of litigation in this matter. With that context, what a witness claims someone else, who is not called as a witness by the government, says, is rank hearsay and also "testimonial" under the *Crawford* analysis. Alternatively, Mr. Pierre respectfully requests a pretrial hearing on all

coconspiratorial statements that the government seeks to introduce. Finally, as a third alternative, counsel requests that the Court order that the Government not to mention, elicit or allude to and to instruct government witnesses not to mention or allude to any such out-of-court statements in the presence of any juror, unless and until this court shall order otherwise. In support of this motion, counsel states the following:

**The Confrontation Clause**

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This bedrock procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

In the 1603 trial of Sir Walter Raleigh for treason, the jury was read a letter and prior testimony by Lord Cobham, Raleigh's alleged accomplice. Raleigh argued that Cobham had lied to save himself: "Cobham is absolutely in the King's mercy; to excuse me cannot avail him; by accusing me he may hope for favour." 1 D. Jardine, CRIMINAL TRIALS 435 (1832). Raleigh's demand that Cobham appear and face him was refused. The jury convicted; Raleigh was sentenced to death. As the Supreme Court noted, English law subsequently developed a rule that a suspect's confession could be admitted only against

himself, and not against others[1] he implicated. *Crawford v. Washington*, 541 U.S. 36, 45-46 (2004).

The Raleigh trial itself involved the very sorts of reliability determinations that [*Ohio v. Roberts*, 448 U.S. 56 (1980)] authorizes. In the face of Raleigh's repeated demands for confrontation, the prosecution responded with many of the arguments a court applying *Roberts*, 448 U.S. 56 (1980)] authorizes. In the face of Raleigh's repeated demands for confrontation, the prosecution responded with many of the arguments a court applying *Roberts* might invoke today: that Cobham's statements were self-inculpatory, that they were not made in the heat of passion, and that they were not 'extracted from [him] upon any hopes or promise of pardon'". *Crawford v. Washington*, 541 U.S. 36, 62 (2004) (internal citations omitted).

The *Crawford* Court concluded that:

> First, the principle evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused. It was these practices that the Crown deployed in

---

[1] See also *United States v. Salgado*, 250 F.3d 438, 450 (6th Cir. 2001) (conversations which further the speaker's individual objectives rather than objectives of conspiracy not made in furtherance of conspiracy and thus inadmissible); *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir.1979) (a "casual admission of culpability to someone [the declarant] had individually decided to trust" is not in furtherance of the conspiracy); *Leach v. State*, 38 Ark. App. 117, 831S.W.2d 615 (1992) (boasting and bragging to wife about robbery not admissible co-conspirator hearsay); *State v. Anders*, 331 S.C. 474, 503 S.E.2d 443, 443 (1998) (casual admission of culpability not admissible co-conspirator hearsay); *Meador v. State*, 812 S.W.2d 330 (Tex.Crim.App. 1991) (conspirators' conversation did not attempt to further any interest otherthan their own, thus inadmissible hearsay).

> notorious treason cases like Raleigh's; that the Marian statutes invited; that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried. The Sixth Amendment must be interpreted with this focus in mind.
>
> Accordingly, we once again reject the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon "the law of Evidence for the time being." * * * Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices. Raleigh was, after all, perfectly free to confront those who read Cobham's confession in court.

Id. at 50-51 (internal citations omitted). "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability'. * * * Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." Id. at 61. "Dispensing with confrontation because the testimony is obviously reliable is akin to dispensing with a jury trial because the defendant is obviously guilty. This is not what the Sixth Amendment prescribes." Id. at 62.

Crawford specifically criticized accomplice confessions, noting that "[t]he unpardonable advice of the *Roberts* test, however, is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude. Despite the pluralities' speculation in [*Lilly v. Virginia*, 527

U.S. 116 (1999)], that it was 'highly unlikely' that accomplice confessions implicating the accused could survive *Roberts*, courts continue routinely to admit them." Crawford v. Washington, 541 U.S. 36, 64 (2004) (internal citation omitted).

In Crawford, the Supreme Court overruled *Ohio v. Roberts*, 448 U.S. 56 (1980) and held that when "testimonial" hearsay is at issue, "the Sixth Amendment demands what the common law required: unavailability and an opportunity for cross-examination." *Crawford*, 541 U.S. at 68. *Crawford* thus should also be read to overrule the decision in *United States v. Inadi*, 475 U.S. 387 (1986), which had upheld the introduction of co-conspirator statements as provided in Fed. Rule of Evid. 801(d)(2)(E). *Crawford's* rationale applies with equal force to *Inadi*, which relied on the theory that "admission of co-conspirators'declarations . . . actually furthers the 'Confrontation Clause's very mission' which is to 'advance the accuracy of the truth determining process in criminal trials.'" *Inadi*, 475 U.S. at 396. *Crawford* makes clear that what is significant is the procedure that the confrontation clause requires not its goal.

Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that

evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. *Crawford*, 541 U.S. at 61. See also *United States v. Francois*, 295 F. Supp.2d 60 (D. D.C. 2003) (admission of non-testifying codefendant's statement against penal interest, which also inculpated defendant would violate defendant's Sixth Amendment confrontation rights).

**Federal Rule of Evidence 801(d)(2)(E)**

Alternatively, if the Court determines that *Crawford* does not overrule Inadi, it should require the government to prove the existence of a conspiracy before admitting any coconspirator statements under Rule 801. The possibilities for fabrication of co-conspirator hearsay in the case at bar are virtually endless; the prosecutor has a wide selection of events and co-conspirators from which to produce a witness who will testify to having heard a damaging declaration. The witnesses for the Government may not accurately remember or report the declaration, which could have taken place as long ago as five years and still come within the time frames charged in the conspiracies in the Indictment. Therefore, because of the low reliability of a co-conspirator's hearsay and its highly prejudicial effect, the Court should be reluctant to admit this evidence in the absence of independent proof of the very agency relationship,

which provides the theoretical basis for the hearsay exception in Rule 801(d)(2)(E).

In a pre-Crawford case, the D.C. Circuit explained the procedure that must be followed for admission of co-conspirator statements:

> A statement offered against a defendant is not hearsay if it was made by a co-conspirator "during the course and in furtherance of" a conspiracy between the declarant and the defendant. Fed.R.Evid.801(d)(2)(E). According to the Government, because the indictment alleged that [the defendant] distributed heroin to "Henry and other coconspirators," any heroin that [the defendant] distributed during the life of the conspiracy was in furtherance of the conspiracy. The argument is not well-taken. The Government must prove by a preponderance of the evidence that 801(d)(2)(E)'s requirements have been met. See *United States v. Beckham*, 968 F.2d 47, 51 n. 2 (D.C.Cir.1992); see also *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). An indictment maynot be offered as evidence to satisfy that burden. See *Brown v. Dep't of Justice*, 715 F.2d 662, 667 (D.C. Cir. 1983).

*United States v. Stover*, 329 F.3d 859, 869 (D. C. Cir. 2003) (holding that admission of coconspirator statements was error but in light of other evidence by expert, the error was harmless).

The proper procedure for admission of alleged conspirator's statements was set forth in *Bourjaily v United States*, 483 U.S. 171 (1987). The court held that "before admitting a coconspirator's statement...[t]here must be evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made 'in the course of and in furtherance of the conspiracy.'" The proponent must satisfy the Court by a

preponderance of evidence. Id. at 175. Moreover as "hearsay statements are presumptively unreliable," for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy. Id. at 179; see also *United States v. Stover*, *supra*; *United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir.), *cert*. *denied*, 488 U.S. 821 (1988); *United States v. Clark*, 18 F.3d 1337, 1341-42 (6th Cir.) ("Since *Bourjaily*, all circuits addressing the issue have explicitly held absent some independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible.") (citing cases), *cert*. *denied*, 115 S.Ct. 152 (1994); *United States v. Bentvena*, 319 F.2d 916, 948-49 (2d Cir.), *cert*. *denied*, 375 U.S. 940 (1963)." *United States v. Tellier*, 83 F.3d 578, 581 (2d Cir. 1996).

**Rule 104 dictates that the Court shall decide the admissibility of evidence.[2]**

Prior to the admission of co-conspirators' statements, the trial court must find that (1) a conspiracy existed, (2) that the co-conspirator and the defendant whom the statements of the coconspirators are offered against where members of the same conspiracy and (3) that the statements were made in furtherance of

---

[2] Defendant acknowledges this motion was drafted in reliance on an excellent motion of the same nature by Ms. Jennifer Wicks.

the conspiracy. *United States v. Gantt*, 199 U.S.App.D.C. 249, 617 F.2d 831 (1980); *United States v. Weisz*, 231 U.S.App.D.C. 1, 718 F.2d 413 (1983). Any such finding must be supported by substantial evidence independent of the hearsay statements themselves. *Gantt*, 617 F.2d at 844; *United States v. Jackson*, 627 F.2d 1198 (D.C. 1980); *United States v. Haldeman*, 181 U.S.App.D.C. 254, 559 F.2d 31 (D.C.Cir. 1976)(per curiam)(en banc), *cert*. *denied*, 431 U.S. 933 (1977).

    The government's case against defendant Wayne Pierre rises and falls on the declarations of the alleged coconspirators and cooperating co-conspirator witnesses. Therefore, such a preliminary determination of the admissibility of the alleged, and unknown to the defense, co-conspirators' statements, would be appropriate in this case. Particularly here, where there appears to be no independent physical evidence linking defendant Wayne Pierre to the death of the victim or any independent non-conspiratorial eyewitnesses to the crime. Several alleged coconspirators made statements to the police concerning various overt acts relating to the conspiracy but only apparently after their arrest and therefore non-admissible against defendant Wayne Pierre as hearsay and not made in furtherance of the alleged conspiracy. Counsel is concerned that without a pretrial airing of alleged coconspirator statements and rulings that defendant Wayne

Pierre will otherwise be prejudiced by inadmissible evidence being aired before the jury. The procedure which eliminates exposing the defendant an unnecessary risk of prejudice is the pre-trial hearing, at which the Government must show by a preponderance of the evidence that the statement was made by a co-conspirator, during the course of and in furtherance of the conspiracy. The court then, without a jury, considers whether the statements satisfy the requirements of Rule 801(d)(2)(E) and makes a preliminary finding. If the statements are found admissible, the case, including the co-conspirators' declarations, is presented to the jury. Compare *Boujarily*, 107 S.Ct. at 2779 n. 1 and *United States v. James*, 590 F. 2d 575 (5th Cir. 1979), where a pretrial determination on the admissibility of statements as opposed to a pretrial evidentiary hearing is not mandated. The pre-trial hearing is also the most logical and equitable time for the defendant to learn of these statements so as to still have some chance of fully consulting leisurely with counsel and for counsel to attempt to further consider whether investigation of the statements can be accomplished in a foreign venue, rather than making the decision in the middle of the Government's case or at the close of the Government's case.  This strikes the balance of the defendant being prosecuted in a foreign venue yet balances among the legitimate, though competing, interests of the defendant, the community, and the judicial process.

WHEREFORE, defendant Wayne Pierre respectfully requests that the Court exclude an out-of-court statements made by alleged co-conspirators as violating Mr. Pierre's rights under the confrontation clause to the United States Constitution. In the alternative, defendant Pierre requests a pretrial hearing on these statements or an order for the Government to refrain from referring to any such statements until it has proved to the Court that the statements meet the requirements for admissibility under Fed. R. Evid. 801(d)(2)(E) during trial.

Respectfully submitted,

_____/s/_____
John J. Carney
Carney and Carney
601 Pennsylvania Ave., N.W., Suite 900
Washington, D.C. 20004
(202) 434-8234
Fax No. (703) 323-9760
Bar No. 241-745

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served, via Pacer, upon Bruce Hegyi, Assistant U.S. Attorney, and other counsel of record.

_____/s/_____
John J. Carney