UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** | : |
| | : Criminal No. 06-102-10(JDB) |
| v. | : |
| **WAYNE PIERRE** | : |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT
ANDERSON STRAKER'S MOTION FOR ISSUANCE OF LETTERS ROGATORY**

Defendant Wayne Pierre replies to the government's response to defendant Anderson Straker's Motion for Issuance of letters Rogatory and states some general concerns regarding the government's objections. Defendant Pierre participated in the drafting of the letters rogatory and disagrees with several of the government's objections.

In its preliminary statement the government states:

that it has "no objection to, and is supportive of, defendants Straker's desire to obtain evidence from the Republic of Trinidad & Tobago that is relevant to the issues to be raised at trial to the extent such information and/or evidence are of the same nature and character to which a defendant would be entitled under Federal Rule of Criminal Procedure 16, had the crimes alleged occurred in the united States. Where the issue is one of "timing." Rather than of "right" —e.g., the criminal history of a potential witness — the Government believes such information should be delivered in the first instance to the Court, rather than to defendant's counsel, so that it will be available in the United States for disclosure to defendant's counsel at such time information would ordinarily become available in a purely domestic prosecution.

1

As an initial matter, much of the information sought in the interrogatories relate to criminal records that are often publicly available in this country and would not involve a Rule 16 request and government involvement. A criminal record check can be made of anyone, including someone that may be a "potential witness", a case jacket could be pulled for arrests and dispositions, documents can be obtained for such matters as affidavits for search warrants, 163 forms, or 251 forms for charges stating the nature of the evidence and participants, and plea agreements. These kinds of documents are publicly available in state courts including all pleadings relating to the case, just as often in Federal Court with Pacer. Further, there is no requirement in obtaining such information that the information must be given to the court as a gatekeeper before it is obtained by the defendant under a theory of "when such information would ordinarily become available in a purely domestic prosecution." The government seeks to confuse some of the record requests of what are a general public type requests in the interrogatories in the requests with their obligations under *U.S. v. Brady*, 373 U.S. 83 (1963) and 18 U.S.C. Section 3500.

In their subparagraph X objection, the government would have only the fact of the criminal conviction disclosed and not the underlying information that would be gleamed publicly here. As

2

noted in another pleading, a high ranking Trinidad inspector advised defense that these records were "disclosable" as well as unspecified case investigative material but that there was no public computerized search system for obtaining such information in Trinidad as there is in the United States. Certainly, if the information is not disclosable, an objection would be lodged by officials with that country. Moreover, the denial of access to arrest records and pending cases of the listed individuals would deny the defense to a significant area of standard impeachment where the witness seeks to testify falsely to curry favor with law enforcement on their current charges.

    We do note a concern that the obligations for the government under *Brady*, *supra*, for such matters as materials, which tend to be exculpatory, materials which might be used to impeach or discredit government witnesses, or disclosure of an eyewitness whose testimony might be developed to induce reasonable doubt, might not be required because the government will argue that such evidence is not within their knowledge or in their possession. 18 U.S.C. Section 3500(b); 26.2(a), Fed. R. Crim. P. The government has not indicated that with respect to the alleged 404(b) other crimes evidence (ECF Doc 199), that they have conducted a review of the materials maintained by the foreign law enforcement on those matters. If the government has done so, these

3

interrogatories should be limited to eliminate duplication in hopes of obtaining a quicker response for less information.

Also, generally speaking, the government asserts objections to the requests similar to this: "implicates potentially privileged/confidential information's and materials in Trinidad & Tobago." (See responses A, E, F, G, I, J, L, M, N, P, Q, S, T, U, and V. The government cites no easily ascertainable rule or regulation that raises that concern relying on what it might do. Defendant would not disagree with the general thought that some matters might conceivably be privileged or confidential in Trinidad; however, often the privilege or confidentiality is waived by the foreign country, just as it is done even in this country, if there is a request. *United Kingdom, requesting the assistance of the United States Government in securing documentary evidence in the case of Regina v. Olumbummi Wood, et. Al., Frank Martin, Oladele Raji, Plainitffs-Appellants, v. United States*, 238 F. 3d 1312 (11th Cir. 2001). In that case, the United States agreed to give work product, sensitive grand jury materials, and wiretap information for a criminal case in England. Also, the foreign jurisdiction can weigh in with seeking appropriate measures to protect the confidentiality of the materials that are turned over as happened in that case.

Turning to the government's claim that criminal records of

"potential witnesses" should be given to the court until a time of such choosing as allowed by a Jencks Act witness, until after the witness testifies, such request is truly inappropriate in this case. Such information would limit the defense investigation that may be required on receipt of the documents. In the usual Federal Court case, the defendant can over night send an investigator to Maryland or Virginia to follow up on court records and witness leads upon disclosure of Jencks material or grant a brief continuance, if the court tolerates the government's legal right to delay production of material until after a witness testifies. In the instance case, the jurisdiction where the investigation may have to be followed up on is not across the Potomac.

The government, on page 3 of its response, objects to interrogatory request L, in footnote 2, by stating the request as drafted would:

implicate all identification procedures, irrespective of whether the witness was able to positively identify, positively exclude, or was uncertain, as to the persons in the identification. This is well-beyond that to which a criminal defendant would be entitled in the prosecution of a purely domestic case. Moreover, as drafted, the Request would provide to defendant's attorneys attorneys the names, addresses, and other identifying information of any person who was asked to participate in an identification procedure. This is also well beyond that to which a defendant is entitled in the prosecution of a crime occurring entirely within the borders of the United States. Ordinarily, a defendant would not learn the identities of a person affirmatively excluding the defendant would be produced early in the process as Brady information; unless a particular witness was to testify at trial, a defendant might not ever learn of the identity of a person who

5

viewed a photo-array and stated that the perpetrator looked "something like" the defendant, or the witness" could not be sure," because the witness only got a fleeting glance in the dark of the perpetrator, or other similar scenarios.

Generally speaking, to make an informed response to a defense request for identification material, the government would review and familiarize itself with the evidence in order to make an informed response. In this case, the government does not represent that it has reviewed the information sought relating to dentifications, as it has apparently had no access to the materials. The government nonetheless, in its summary then substantially qualifies itself as to what should be given, for example, saying "ordinarily" because there are so many exceptions requiring disclosure or what may be considered *Brady* identification information that the material must be turned over. The government would trust a foreign country to make the subtle review distinctions for the government, even where there is no indication that Trinidad makes such distinctions or would have any similar distinctions. We disagree. We would request the material as sought to cover the most important of constitutional protections under the Fifth and Sixth Amendments. Likewise, the government is not fully correct in some of its broad assertions regarding identifications. It is well established that if someone identifies someone other than the defendant as a perpetrator of an

6

alleged offense by name, or in any identification procedure, the government would be obligated to turn that information over even if they don't testify. *Cannon v. Alabama*, 585 F. 2d 1211, 1215-1216 (5th Cir. 1977); Grant v. Aldredge, 498 F. 2d 376, 382 (2nd Cir. 1974). In a conspiracy case, the non-identification of a co-conspirator as a participant may be just as important impeachment information of a witness that says something to the contrary.

Finally, defendant joins in the motion to adopt and join certain motions and additional requests for letters rogatory filed by Kevin Nixon (ECF Doc 218)

For these reasons, defendant requests the court to grant the request for letters rogatory.

Respectfully submitted,

_____/s/_____
John J. Carney
Carney and Carney
601 Pennsylvania Ave., N.W., Suite 900
Washington, D.C. 20004
(202) 434-8234
Fax No. (703) 323-9760
Bar No. 241-745

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served, via Pacer, upon Bruce Hegyi, Assistant U.S. Attorney, and other counsel of record.

_____/s/_____
John J. Carney